UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

AKIRA SMALLS,

COMPLAINT

Plaintiff,

Case No. 15 cv 4973

-against-

CENTRAL PARK BOATHOUSE, LLC, individually and d/b/a THE
LOEB BOATHOUSE CENTRAL PARK,
NICK SARANTIDIS, individually, JAMES MODENA, individually,
and RUSSELL ROSENBERG, individually

Defendants.

-------------------------------------------------------------------X

Plaintiff AKIRA SMALLS, by and through her attorneys, THE NEVELOFF LAW

FIRM, PC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.  Plaintiff AKIRA SMALLS complains pursuant to Title VII of the Civil Rights Act of

    1964. as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil

    Rights Act of 1991, Pub. L. No. 102-166 ('Title VII") and the New York State Human Rights

    Law, New York State Executive Law §296 *et. seq.* ("NYSHRL") and seeks damages to redress

    the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against,

    severely humiliated, mentally anguished, and emotionally and physically distressed by her

    employer.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 626(c), and 28 U.S.C. §§1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under New York State law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon Defendants' place of business within the Southern District of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC") within 300 days of the harassment and discrimination.

6. On or about August 25, 2014 Plaintiff filed Charge of Discrimination with the EEOC against CENTRAL PARK BOATHOUSE, LLC, individually and d/b/a THE LOEB BOATHOUSE CENTRAL PARK.

7. Plaintiff received a Notice of Right to Sue from the EEOC, dated March 31, 205 with respect to the herein charges of harassment and discrimination.

8. This action is being commenced within 90 days of receipt of said Right to Sue Letter.

## PARTIES

9. Plaintiff is a resident of the State of New York, County of Queens.

10. Plaintiff is African-American woman.

11. Defendant CENTRAL PARK BOATHOUSE LLC is a domestic limited liability company duly existing under the State of New York.

12.   Defendant CENTRAL PARK BOATHOUSE LLC does business as THE LOEB BOATHOUSE CENTRAL PARK.

13.   Defendants CENTRAL PARK BOATHOUSE LLC, individually and d/b/a THE LOEB BOATHOUSE CENTRAL PARK (hereinafter "BOATHOUSE").

14.   At all times material Defendant BOATHOUSE operated a restaurant located at East 72nd Street and Park Drive North, New York, NY 10010.

15.   At all times material Plaintiff SMALLS was an employee of Defendant BOATHOUSE.

16.   At all times material, Defendant NICK SARANTIDIS (hereinafter "SARANTIDIS") was and is the General Manager and an Owner of Defendant BOATHOUSE.

17.   At all times material, Defendant SARANTIDIS had supervisory authority over Plaintiff with regards to her employment.

18.   At all times material, Defendant JAMES MODENA (hereinafter "MODENA") was a Restaurant Manager at Defendant BOATHOUSE.

19.   At all times material, Defendant MODENA had supervisory authority over Plaintiff with regards to her employment.

20.   At all times material, Defendant RUSSELL ROSENBERG (hereinafter "ROSENBERG") was an employee of Defendant BOATHOUSE.

## MATERIAL FACTS

21.   In or around June 2013, Plaintiff began her employment as a hostess at Defendant BOATHOUSE.

22.   In or around the end of July 2013 after training herself, Plaintiff successfully worked a night as Maitre D' and was kept in that position.

23.     Almost instantly, Defendant's employee Restaurant Manager MODENA, a newly married man, began making inappropriate sexual comments and conversation towards Plaintiff such as "Do you like anal?" and "I can juggle having sex with four girls in the same night."

24.     On or about August 9, 2013 a customer asked Plaintiff where the ATM was located. Defendant MODENA then asked Plaintiff "Do you know what ATM means? It means ass to mouth." Plaintiff immediately felt uncomfortable and asked Defendant MODENA to stop making inappropriate comments in her presence. Defendant MODENA ignored Plaintiff's request and repeatedly made the similar comments throughout Plaintiff's employment.

25.     In or around August 2013, when Plaintiff was wearing a maxi dress, Defendant MODENA approached Plaintiff's backside and said "yum." Plaintiff immediately became uncomfortable and asked Defendant MODENA to leave her alone.

26.     In or around August 2013 and throughout Plaintiff's employment, Defendant MODENA would tell Plaintiff "move your box," referring to Plaintiff's vagina, when he attempted to use the computer at her podium.

27.     On or about August 24, 2013 Plaintiff made several trips to the bathroom. Defendant MODENA waited until Plaintiff returned from the bathroom and asked her "Do you have an STD or UTI?" Defendant giggled and asked Plaintiff "What does the medication start with, C or F?" Defendant also told Plaintiff that "switching between vaginal and anal sex is bad." Plaintiff told Defendant MODENA that she felt uncomfortable and asked him to stop asking her inappropriate questions, but Defendant MODENA ignored her request and persisted for a week.

28.   In or around August 2013, Plaintiff complained to General Manager and Owner Defendant SARANTIDIS about Defendant MODENA's constant harassment, and asked to be separated from Defendant MODENA. Defendant SARANTIDIS stated that he would "talk" to Defendant MODENA, but no action was taken to remedy the harassment.

29.   In or around September 2013, Defendant MODENA asked Plaintiff "Which hostesses are available?" Plaintiff stated that most of the hostesses were married or in long-term relationships. Defendant then asked Plaintiff "what about you?"

30.   On or about November 16, 2013 Plaintiff was scheduled to close the restaurant with Defendant MODENA. In an attempt to initiate sex with Plaintiff, Defendant MODENA assumed a seductive tone and asked Plaintiff whether she had a date for the yearly company raffle event. Plaintiff stated that employees could not bring dates. Defendant MODENA asked Plaintiff "why don't we go together?" Plaintiff refused and told Defendant MODENA that she felt uncomfortable being treated like that because he was her Manager.

31.   That same day, despite Plaintiff's request to be left alone, Defendant MODENA asked her "why don't you tell me some dirty stories?" Plaintiff immediately felt uncomfortable and refused. However, Defendant MODENA sexually harassed Plaintiff by telling her his own dirty story about how he met a woman at a bar, took her to his basement and had sex with her. Once he finished, he lit a cigarette and it lit the woman's hair on fire." Defendant MODENA thought this was hilarious, but again, Plaintiff did not want to hear about his sex life and felt extremely uncomfortable being around him.

32. That day Defendant MODENA also told Plaintiff that he didn't want to go to the holiday party at his former restaurant because there were two waitresses and one hostess there who he was having sex with and he didn't want to be around all of them at the same time.

33. Plaintiff was scheduled to work on November 17, 2013 and was supposed to close that evening. Because she didn't want to be alone with Defendant MODENA during closing, she made an excuse about a family emergency in order to avoid Defendant MODENA'S continuing harassment.

34. Defendant MODENA would continuously make inappropriate comments towards Plaintiff and would try to convince her to give him details about her sexual history.

35. A few days later Defendant MODENA approached Plaintiff while she was working, placed his face near a Christmas wreath, and told her "I look like I'm in a 70's porn with this mustache." Plaintiff ignored Defendant MODENA.

36. Although Plaintiff became increasingly offended, intimidated and stressed by Defendant MODENA's behavior, she endured the harassment because she feared losing her job.

37. Plaintiff continuously complained to Defendant BOATHOUSE General Manager and Owner Defendant SARANTIDIS about the inappropriate and harassing conduct from Defendant MODENA.

38. Defendant SARANTIDIS nor anyone on behalf of Defendant BOATHOUSE attempted to remedy the sexual harassment by Defendant MODENA.

39. No appropriate or reasonable actions were taken and Plaintiff continued to work in a hostile work environment.

40. Defendant MODENA abused his power as Plaintiff's immediate supervisor.

41.   On or about October 21, 2013, Defendant SARANTIDIS asked Plaintiff to join their Chef Defendant ROSENBERG, to a "Chef's Event" where she would represent the company. Defendant ROSENBERG is married.  Plaintiff told her two supervisors that she was only 19. Nevertheless, Defendant SARANTIDIS and Defendant ROSENBERG said "it wouldn't be a problem because they wouldn't ID anyway."

42.   At the event, Plaintiff drank six (6) glasses of wine, and became intoxicated. ROSENBERG noticed that Plaintiff was intoxicated and asked her to take off her jacket. When Plaintiff took off her jacket and revealed her tank top, Defendant ROSENBERG gawked at her and commented "nice."

43.   Despite the fact that Plaintiff was already visibly drunk, Defendant ROSENBERG encouraged her to go to a bar downtown. Plaintiff felt pressured into going.  Once there, Defendant ROSENBERG bought Plaintiff two more drinks.

44.   After the bar, Defendant ROSENBERG told Plaintiff to get into his car so they could go to a restaurant. Plaintiff was extremely intoxicated and she agreed. In the car, Defendant ROSENBERG said to Plaintiff: "Are you a sweet girl? Show me how sweet you really are.  I want to taste you."  Defendant ROSENBERG then leaned into Plaintiff and tried to kiss her but she quickly rebuffed his advances.

45.   At that point Plaintiff wanted to go home but Defendant ROSENBERG drove Plaintiff to another bar, where he ordered a cocktail for Plaintiff. Defendant ROSENBERG did not consume any alcoholic beverages throughout the night, while Plaintiff was drunk and unable to protect herself. Defendant ROSENBERG also asked Plaintiff "have you ever had an affair?"

46.     Defendant ROSENBERG purposely got the underage Plaintiff intoxicated in an attempt to have sex with Plaintiff.

47.     After the second bar, Defendant asked Plaintiff "How can we get to your house?" Plaintiff feared that if Defendant ROSENBERG dropped her off at her home that he might try to come inside with her so she declined to let him take her home.

48.     Plaintiff felt so intoxicated and unsafe due to Defendant ROSENBERG's advances that she decided to take the subway home at three (3) o'clock in the morning so that she could escape Defendant ROSENBERG's sexual advances.

49.     Plaintiff felt pressure to spend time with Defendant ROSENBERG and tolerate his sexual advances that night because of his position at Defendant BOATHOUSE.  Plaintiff did not complain to management about ROSENBERG in fear of retaliation, however, she did confide in co-worker Cristina Cuadra.

50.     In or around the beginning of January 2014 at a company event, ROSENBERG asked Plaintiff to dance with him three different times throughout the evening. Plaintiff refused his advances every time. Nevertheless, later that evening ROSENBERG also asked Plaintiff to go home with him three times throughout the night. Plaintiff refused his requests and asked him to leave her alone.

51.     Most of the managers at BOATHOUSE are of Greek descent, and Defendants systematically favor Greek employees by offering them promotions over non-Greek employees.

52.     In or around August 2013, BOATHOUSE hired SYNTILLAS as a hostess. SYNTILLAS, who is of Greek descent, asked Plaintiff to train her as a Maitre D' and Plaintiff agreed.   Even though Plaintiff was more qualified for the management position,

had worked longer for the Defendants, and had trained SYNTILLAS, Defendants

promoted SYNTILLAS, from a "Hostess" to "Maitre D' Manager."

53.   At the time, Cristina Cuadra, of Hispanic descent, was also a Maitre D' with more

experience than SYNTILLAS, yet Defendants promoted SYNTILLAS because she was

Greek.

54.   By way of another example, George Spiridakyis, of Greek descent, was promoted from

waiter to Floor Manager despite having no management experience. Plaintiff, who has

eight months experience as a Maitre D', was never considered for a management

position.

55.   On multiple occasions throughout Plaintiff's employment, SYNTILLAS would also do

discriminatory acts and make discriminatory statements.  SYNTILLAS would ask about

potential employees who dropped off their resumes, asking "Are they white?" thereby to

discriminating against non-Caucasian individuals.

56.   By way of example, a young woman of Irish descent dropped off her resume at the

BOATHOUSE.  SYNTILLAS said about the Caucasian woman, in front of Plaintiff, that

"she's white, so [she's] great for the job."

57.   Throughout Plaintiff's employment she usually straightened her hair.  When it was not

straightened SYNTILLAS would ask Plaintiff "Why is your hair sticking out like that?"

in reference to her natural hair texture.  When Plaintiff's hair was in its natural state,

SYNTILLAS would constantly ask Plaintiff what she was going to do with her hair.

58.   In or around May 2014, SYNTILLAS asked Plaintiff to "get a weave," so her hair can

look straight.  SYNTILLAS showed Plaintiff a website and intended to change Plaintiff's

appearance so she could look less "ethnic" and more Caucasian. In fear of losing her job, Plaintiff did change her hairstyle despite the blatantly racist statements of SYNTILLAS.

59. On another occasion, Defendant MODENA saw Plaintiff with her hair in its natural condition and asked "Did you do something new to your hair" and he burst out laughing as he walked away.

60. After the weekend of November 16th and 17th as described above, Plaintiff spoke to Defendant SARANTIDIS again and stated that she wanted to make another complaint about Defendant MODENA since her two previous complaints had gone unresolved. SARANTIDIS stated that there were no formal complaint procedures, but Plaintiff could write a letter to Dean Poll, BOATHOUSE proprietor.

61. On or about December 8, 2013 Plaintiff wrote a complaint letter to Dean Poll explaining the sexual harassment she endured from Defendant MODENA, which had cause her at times to leave work in tears.

62. On or about December 9, 2013 Defendant SARANTIDIS and Director of Operations, Peter Bischoff, had a meeting with Plaintiff, where they asked her questions about Defendant MODENA's conduct. As a result of the meeting, Defendants merely instructed Defendant MODENA to stay away from Plaintiff and to stop talking to Plaintiff. This made it very difficult for Plaintiff to do her job.

63. On or about December 16, 2013 Defendant SARANTIDIS told Plaintiff that they would not fire Defendant MODENA because he had been working for Defendants for 27 years and that he was going to be transferred to another restaurant in the near future anyway.

64. On or about December 23, 2013 Defendant SARANTIDIS required Plaintiff to meet with "off-site Human Resources Representative" Cindy Schmitt-Minniti, where she gave a

statement along with SYNTILLAS and co-workers Cristina Cuadra and Austin

Fransisconi.

65.    Nevertheless, Defendant MODENA continued working for BOATHOUSE that week.

66.    On or about December 29, 2013 Plaintiff informed Defendants that she needed an extra

day off so her schedule changed from 3 days to 2 days a week.  In February 2014,

Plaintiff needed time off for school and Defendants agreed to re-employ Plaintiff when

she was finished with school.  Plaintiff returned as a hostess on June 1, 2014.

67.    When Plaintiff returned to work at BOATHOUSE both Defendant SARANTIDIS and

SYNTILLAS treated Plaintiff differently.  They would tell her "what's going on?  You

used to be so good at this?"  Defendants were familiar with the daily racial and sexual

harassment. Nevertheless, they retaliated against Plaintiff for complaining about sexual

harassment by demoting Plaintiff from Maitre D' to hostess, cutting her hours from full-

time to part-time, and changing her shifts.

68.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized,

embarrassed, and emotionally distressed.

69.    As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff suffered

severe emotional distress and physical ailments.

70.    As a result of the acts and conduct complained of herein, Plaintiff has suffered future

pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and

other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical

distress.

71.    As a result of the above, Plaintiff has been damaged in an amount which exceeds the

jurisdiction limits of all lower Courts.

72.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

73.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

74.    Title VII states in relevant part as follows: SEC. 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . . . (k) The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise.

75.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her sex and gender.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

76.   Plaintiff FAVA repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

77.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides

that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any

practice made an unlawful employment practice by this subchapter, or because [s]he has

made a charge, testified, assisted or participated in any manner in an investigation,

proceeding, or hearing under this subchapter."

78.   Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et*

*seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of

employment because of her opposition to the unlawful employment practices of

Defendant.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

79.   Plaintiff  repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

80.   Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of the age, race, creed, color, national

origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or

to bar or to discharge from employment such individual or to discriminate against such

individual in compensation or in terms, conditions or privileges of employment."

81.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her gender, sex and hostile work environment.

82.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION UNDER
## STATE LAW AIDING & ABETTING

83.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:  "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

85.    Defendants violated the section cited herein as set forth.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

86.    Plaintiff FAVA repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

88.    Defendants further caused Plaintiff to be disparately treated on the basis of gender, sexual harassment and retaliation.

89.     Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating

        against Plaintiff.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

90.     Plaintiff FAVA repeats and realleges each and every allegation made in the above

        paragraphs of this complaint.

91.     New York State Executive Law §296(6) provides that it shall be an unlawful

        discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of

        any acts forbidden under this article, or attempt to do so."

92.     Defendants engaged in an unlawful discriminatory practice in violation of New York

        State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the

        discriminatory conduct.

## AS A SEVENTH CAUSE OF ACTION UNDER
## STATE LAW RETALIATION

93.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs

        of this complaint as if set forth herein more fully at length.

94.     New York State Executive Law §296(7) provides that it shall be an unlawful
        discriminatory practice:

                "For any person engaged in any activity to which this section applies to retaliate or

                discriminate against any person because [s]he has opposed any practices

                forbidden under this article."

95.     Defendants violated the section cited herein as set forth.

## AS A EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

96.  Plaintiff FAVA repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

97.  The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful

discriminatory practice: "(a) For an employer or an employee or agent thereof, because of

the actual or perceived age, race, creed, color, national origin, gender, disability, marital

status, sexual orientation or alienate or citizenship status of any person, to refuse to hire

or employ or to bar or to discharge from employment such person or to discriminate

against such person in compensation or in terms, conditions or privileges of

employment."

98.  Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory

working conditions, and otherwise discriminating against the Plaintiff FAVA  because of

Plaintiff FAVA 's gender, sexual harassment and hostile work environment.

99.  Plaintiff FAVA hereby makes a claim against Defendants under all of the applicable

paragraphs of New York City Administrative Code Title 8.


## AS AN NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

100.  Plaintiff  repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

101.  The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be

unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise

discriminate against any person because such person has opposed any practices forbidden

under this chapter. . . "

102.    Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff.

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's

employer.

### AS A TENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

103.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

104.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be

unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce

the doing of any of the acts forbidden under this chapter, or attempt to do so."

105.    Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory, unlawful and retaliatory conduct.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE
### NEW YORK CITYADMINISTRATIVE CODE

106.    Plaintiff FAVA repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

107.    Section 8-107(19), Entitled Interference with Protected Rights provides that: "It shall be

an unlawful discriminatory practice for any person to coerce, intimidate, threaten or

interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in

the exercise or enjoyment of, or on account of his or her having aided or encouraged any

other person in the exercise or enjoyment of, any right granted or protected pursuant to

this section."

108.    Defendants violated the above section as set forth herein.


## AS A TWELFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE SUPERVISORY LIABILITY


109.    Plaintiff FAVA repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

110.    Section 8-107(13) entitled Employer liability for discriminatory conduct by employee,

agent or independent contractor provides:

a. An employer shall be liable for an unlawful discriminatory practice based upon the

conduct of an employee or agent which is in violation of any provision of this section

other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the

conduct of an employee or agent which is in violation of subdivision one or two of

this section only where:

i. the employee or agent exercised managerial or supervisory responsibility;

or

ii. the employer knew of the employee's or agent's discriminatory conduct,

and acquiesced in such conduct or failed to take immediate and

appropriate corrective action; an employer shall be deemed to have

knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

111.   Defendants violated the above section as set forth herein.

## JURY DEMAND

112.   Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants, jointly and severally in an amount to be determined at the time of trial for all available relief and damages including but not limited to emotional distress, physical injury, lost wages, past and future, front pay, back pay, punitive damages, attorney's fees, liquidated damages, statutory damages, and costs and interest.

Dated: New York, New York
       June 25, 2015

                                        THE NEVELOFF LAW FIRM, PC
                                        Attorneys for Plaintiff


                                 By:    _____
                                        Daniel I. Neveloff, Esq.
                                        30 Broad Street, 35th Floor
                                        New York, New York 10004
                                        (212) 964-2066